GARLOCK v. WAKE CNTY. BD. OF EDUC.

[211 N.C. App. 200 (2011)]

BARBARA GARLOCK, ANDREW SNEE, BY AND THROUGH JULIE SNEE, HIS PARENT AND GUARDIAN, DAVID EISENSTADT, BY AND THROUGH ALISON EISENSTADT, HIS PARENT AND GUARDIAN, WOODROW BARLOW, BY AND THROUGH AVA BARLOW, HIS PARENT AND GUARDIAN, JUDY PIDCOCK, ERIN BYRD, GERALD WRIGHT, AND COLETHIA EVANS, CITIZENS OF WAKE COUNTY, NORTH CAROLINA, PLAINTIFFS v. WAKE COUNTY BOARD OF EDUCATION, A PUBLIC BODY, AND ITS MEMBERS, IN THEIR OFFICIAL CAPACITIES, DEFENDANTS

No. COA10-1123

(Filed 19 April 2011)

**1. Public Records— Open Meetings Law—misapprehension of order—case properly dismissed—immediate hearing— no prejudice**

Plaintiffs' argument on appeal in an action seeking relief under North Carolina's Open Meetings Law that the trial court "dismissed" their complaint *ex mero motu* was a misapprehension of the trial court's order. The trial court made findings of fact and conclusions of law and ruled upon the merits of plaintiffs' claims, and as there were no further claims to be determined, dismissed the case. Defendant's argument that the trial court erred by hearing the case on the merits only eight days after the complaint was filed and before an answer was filed or discovery was conducted was overruled. Defendants suffered no prejudice from the "immediate" hearing, as the judgment was predominantly in their favor and denied the most significant relief sought by plaintiffs.

**2. Appeal and Error— standard of review—violation of Open Meetings Law—de novo—appropriate remedy—abuse of discretion**

The Court of Appeals applied a *de novo* standard of review to the issue of whether a violation of the Open Meetings Law (OML) occurred. The Court of Appeals reviewed the trial court's determination of the appropriate remedy for violation of the OML for abuse of discretion.

**3. Public Records— Open Meetings Law—violations—no affirmative relief**

The trial court in an action concerning North Carolina's Open Meetings Law (OML) properly found violations of the OML as to a ticketing procedure put into place and in the exclusion of the public from a Committee of the Whole (COW) meeting. The trial

GARLOCK v. WAKE CNTY. BD. OF EDUC.

[211 N.C. App. 200 (2011)]

court erred in concluding that a violation of the OML occurred when defendants failed to make accommodations for members of the public who were disabled. The trial court did not abuse its discretion by denying plaintiffs affirmative relief for defendants' violations.

Appeal by plaintiffs and defendants from an order entered 14 May 2010 by Judge William R. Pittman in Superior Court, Wake County. Heard in the Court of Appeals 24 February 2011.

*Blue Stephens & Fellers LLP by Dhamian Blue; North Carolina State Conference of the NAACP by Irving Joyner; UNC Center for Civil Rights by Mark Dorosin; North Carolina Justice Center by Jack Holtzman; Southern Coalition for Social Justice by Anita Earls; and Wood Jackson PLLC by W. Swain Wood, for plaintiffs-appellants.*

*Shanahan Law Group, PLLC by Kieran J. Shanahan and John E. Branch, III, for defendant-cross appellant Wake County Board of Education.*

STROUD, Judge.

Intense public interest in actions under consideration by defendant Wake County Board of Education led to increased attendance by members of the public at Board meetings in early 2010, so that on 23 March 2010, the meeting rooms for the Committee of the Whole ("COW") meeting and full Board meeting could not accommodate all who wished to attend. Plaintiffs filed this lawsuit seeking relief under North Carolina's Open Meetings Law stemming from the exclusion of members of the public from the 23 March 2010 meetings, and as requested by the plaintiffs, the trial court heard the entire matter on the merits only eight days after the lawsuit was filed. We affirm the trial court's order which found that on 23 March 2010, defendants violated the Open Meetings Law by their last-minute adoption of a ticketing policy and by exclusion of members of the public from the COW meeting, but we vacate the trial court's conclusion as to defendants' failure to accommodate a disabled person because the Open Meetings Law makes no distinction between access by disabled members of the public and access by non-disabled members of the public. The trial court properly considered defendants' actions according to the standard of reasonableness of opportunity for public access to the meetings. In addition, the trial court properly exercised its discretion by declining to grant affirmative relief and dis-

missing the case where the violations occurred only on 23 March 2010, defendants have taken reasonable measures to avoid future violations, and the violations were not committed in bad faith.

## I. Procedural background

On 6 May 2010, a "diverse group of Wake County citizens" ("plaintiffs") issued civil summons to the Wake County Board of Education ("Board") and its members in their official capacities (the Board and individual defendants are hereinafter referred to collectively as "defendants") and filed a complaint against defendants for relief pursuant to the North Carolina Open Meetings Law, N.C. Gen. Stat. § 143-318.16 *et seq.* The complaint asked the court to "[e]nter a declaratory judgment that Defendants violated the Open Meetings Law" at the 23 March 2010 meetings; "[d]eclare null and void all actions taken at the [Wake County Board of Education] meetings held on March 23, 2010;" and "[e]nter an injunction requiring Defendants to . . . [c]onduct all meetings openly[.]" The summons and complaint was accompanied by a "Notice of Hearing" to defendants stating that "Plaintiff's Complaint for Relief Under Open Meetings Law will be heard at 2:00 p.m. on Wednesday May 12, 2010[.]"

On 10 May 2010, plaintiffs filed a motion for preliminary and permanent injunctions and declaratory judgment pursuant to N.C. Gen. Stat. §§ 143-318.16[1] and 143-318.16A.[2] Plaintiffs also filed ten affidavits, accompanied by numerous exhibits, which defendants contend that they did not begin to receive until "[a]fter the close of business on May 10, 2010[.]" Plaintiffs also filed and served an "Amended Notice of Hearing" on 10 May 2010 stating that Judge William R. Pittman would preside over the hearing on 12 May 2010 rather than Judge Donald W. Stephens, but, other than the change in the judge, the substance of the amended notice of hearing was identical to notice of hearing filed on 6 May 2010.

On 11 May 2010, defendants replied with an "Objection, Motion to Strike, and Motion for Appropriate Relief," contending that plaintiffs'

---

1. N.C. Gen. Stat. § 143-318.16 (2009) states, in pertinent part, that "[t]he General Court of Justice has jurisdiction to enter mandatory or prohibitory injunctions to enjoin (i) threatened violations of this Article, (ii) the recurrence of past violations of this Article, or (iii) continuing violations of this Article."

2. N.C. Gen. Stat. § 143-318.16A(a) (2009) states, in pertinent part, that "[a]ny person may institute a suit in the superior court requesting the entry of a judgment declaring that any action of a public body was taken, considered, discussed, or deliberated in violation of this Article. Upon such a finding, the court may declare any such action null and void."

motion forced defendants to "respond to Plaintiffs' Motion for Preliminary and Permanent Injunctions and Declaratory Judgment, and to rebut at least six (6) affidavits provided to Defendants **less than forty-six (46) hours prior to the hearing**" in violation of N.C. Gen. Stat. § 1A-1, Rule 6(d).[3] (Emphasis in original.) Defendants further contended that plaintiffs' motion "asks the Court to rule on the merits of the case, even though Defendants have not had a chance to respond to Plaintiff's Complaint." Defendants repeated, that "Plaintiffs are asking this Court to make an adjudication on the merits of this case without providing Defendants with the opportunity to even Answer the allegations contained in the Complaint, let alone engage in discovery or any form of due process." Defendants asked the trial court to "continue [the hearing] to a subsequent date in a manner consistent with the North Carolina Rules of Civil Procedure."

On 12 May 2010, plaintiffs submitted a "Memorandum in Support of Plaintiffs' Motion for Injunctive Relief and a Declaratory Judgment[.]" The trial court conferred with counsel for the parties on 12 May 2010 and continued the hearing until 14 May 2010 to allow more time for defendants to review the affidavits filed by plaintiffs and to respond to the affidavits. On 13 May 2010, defendants filed a "Brief in Opposition to Plaintiffs' Motion for Preliminary and Permanent Injunctions and Declaratory Judgment" as well as five affidavits and numerous exhibits. Defendants did not file an answer to the complaint.

On 14 May 2010, the trial court held a hearing upon plaintiffs' complaint and motions; on the same day, the trial court entered an order stating that the court had considered "the entire record, the arguments of counsel and the applicable law" and made the following findings of fact:

---

3. N.C. Gen. Stat. § 1A-1, Rule 6(d) (2009) states that "[a] written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than five days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion; and except as otherwise provided in Rule 59(c), opposing affidavits shall be served at least two days before the hearing. If the opposing affidavit is not served on the other parties at least two days before the hearing on the motion, the court may continue the matter for a reasonable period to allow the responding party to prepare a response, proceed with the matter without considering the untimely served affidavit, or take such other action as the ends of justice require. For the purpose of this two-day requirement only, service shall mean personal delivery, facsimile transmission, or other means such that the party actually receives the affidavit within the required time."

1.  The Wake County School Board (Board) operates the public schools of Wake County, North Carolina, and its nine members are elected by the voters of Wake County.

2.  The plaintiffs are citizens and residents of Wake County who desire to attend meetings of the Board.

3.  The Board has meetings of the Board and the Committee of the Whole (COW) twice each month which are normally held in the Board's offices.

4.  Recent meetings of the Board have generated significantly greater public attention and desire to attend than the Board normally experiences.

5.  In anticipation of an extraordinarily large crowd for the March 23, 2010 meeting of the Board and the COW, the Board initiated measures to handle the crowd.

6.  The measures involved the issuance of tickets to the Board meeting and limiting the public's attendance to those who had tickets, excluding the public from the room in which the COW met, and the provision of overflow space in which those who could not enter the meeting room could observe the meetings on live electronic audiovisual feeds.

7.  Some of the plaintiffs were prevented or deterred from attending one or both of the meetings as a result of the measures.

8.  The ticketing procedures changed over the course of issuance without notice to the public.

9.  One early ticketing requirement required the holder of a ticket to remain on the premises for several hours prior to the meeting.

10. One of the plaintiffs was denied accommodation for a disability at meetings on March 2.

11. The Board, through arrangements with local media outlets, provides live audiovisual transmission of its meetings through a cable television station and, since December, 2009, the internet via the website of another local television station.

12. Meetings of the COW are also simultaneously broadcast on the internet through the same arrangement.

13. The live audiovisual broadcasts within the Board offices for the overflow crowd have not always been reliable.

14. Subsequent to the meetings of March 23, 2010, the Board has made efforts to improve the technical quality of the simultaneous broadcast to the overflow rooms.

15. The Board makes provisions for public comment from members of the public who are present at Board offices but who cannot secure a seat in the meeting room.

16. The Board normally makes available for public comment more time than is required by the law of North Carolina.

17. The Board has refused requests to move the meetings to larger venues.

18. The press has full access to Board and COW meetings.

The trial court made the following relevant conclusions of law:

2.  The Board and the COW are public bodies.

3.  The Board is required by North Carolina General Statute §143-318.9 *et.seq.*[sic] (the Open Meetings Law) to take reasonable measures to provide for public access to its meetings.

4.  The provision for simultaneous broadcast of its meetings on television and over the internet are reasonable measures.

5.  The provision of overflow rooms to accommodate members of the public who cannot find seats in the meeting rooms and for live audiovisual broadcast of its meetings into the overflow rooms are reasonable measures.

6.  The maintenance of safety and security for members of the public, members of the Board, staff and the press is reasonable.

7.  The Board is not required by any provision of North Carolina law to change the venue of its meetings if reasonable measures can be taken to accommodate the members of the public who wish to attend.

8.  A ticketing procedure is not necessarily unreasonable with adequate public notice.

9.  A ticketing procedure requiring a ticket holder to remain on the premises for hours preceding a meeting is unreasonable.

10. Complete exclusion of members of the public from meetings of the COW prior to the meetings is unreasonable.

11. Failing to make accommodations for members of the public who are disabled is unreasonable.

12. The Court cannot conclude on this record that the Board engages in continuous violations of the Open Meetings Law or that past violations, if any, will reoccur.

13. The Court cannot conclude on this record that any alleged violation of the Open Meetings Law affected the substance of any action of the Board.

14. The Court cannot conclude on this record that any alleged violation of the Open Meetings Law prevented or impaired public knowledge or understanding of the people's business.

15. The Court cannot conclude on this record that any alleged violation was committed in bad faith for the purpose of evading or subverting the public policy embodied in the Open Meetings Law.

16. The Board makes reasonable efforts to conduct its business in the open and in view of the public.

17. Meetings of the Board and the COW are open to the public as contemplated by the Open Meetings Law.

18. The Board is taking reasonable action to implement measures to address alleged past violations of the Open Meetings Law.

19. The Board is implementing reasonable measures to accommodate larger than normal crowds.

20. The Board has implemented reasonable measures to accommodate whatever crowd attends the May 18 meeting.

[21]. There are no grounds in law to invalidate any action of the Board.

The trial court then ordered the following:

1. The plaintiffs' motion for a preliminary injunction is denied.

2. The plaintiffs' motion for a permanent injunction is denied.

GARLOCK v. WAKE CNTY. BD. OF EDUC.

[211 N.C. App. 200 (2011)]

3. The plaintiffs' motion for a declaratory judgment is denied.

4. The plaintiffs' complaint for relief under the Open Meetings Law is dismissed.

From this order, plaintiffs appeal, and defendants cross-appeal.

II. "Immediate hearing" under N.C. Gen. Stat. § 143-318.16C

[1] Plaintiffs state as their first issue that "the trial court made an error of law in dismissing the complaint *ex mero motu*." They note that defendants had not filed a motion to dismiss. In their cross-appeal, defendants argue that the trial court erred by hearing the case on the merits only eight days after the complaint was filed and before answer was filed or discovery was conducted. Although the two issues are different, both arise from the unusual procedural posture of this case. We will therefore first address how this case came to be heard on the merits on 14 May 2010 under N.C. Gen. Stat. § 143-318.16C.

Plaintiffs requested in their complaint that their claims be "[s]et down for immediate hearing" under N.C. Gen. Stat. § 143-318.16C. They also requested in their notice of hearing and amended notice of hearing that the trial court hear "Plaintiffs' Complaint For Relief Under Open Meetings Law" and in their "Memorandum in Support of Plaintiffs' Motion for Injunctive Relief and a Declaratory Judgment[,]" they urged the trial court to grant both preliminary and permanent injunctive relief as well as a declaratory judgment voiding actions of the Board. Defendants objected to a full hearing on such short notice, filing their "Objection, Motion to Strike, and Motion for Appropriate Relief" and requesting at the outset of the hearing that the trial court limit its consideration to the request for preliminary injunction and seeking sufficient time to answer and conduct discovery prior to a full hearing on the merits.

At the start of the hearing on 14 May 2010, defendants reiterated their objection to proceeding on any matters other than the motion for preliminary injunction. The trial court responded as follows:

It was the Court's intention to as we talked in the conference call, to proceed as if this were a hearing on preliminary injunction, mainly because of the lack of notice. There's no notice. But the time period given to the School Board to reply in the—after reading all the affidavits and the briefs, does that still apply, you still need more time?

Counsel for defendants responded that they were satisfied with the additional time for purposes of a hearing on a preliminary injunction but were concerned only about the "scope of the relief," as the plaintiffs' brief in support of their motion "seems to be looking for today, some final adjudication on the merits." The trial court asked, "What more would Defendant need to do to proceed on the whole thing?" Defendants' counsel responded that they would need time to file an answer, to "conduct discovery in the ordinary course" and to take depositions, noting that "even though the law in this area requires expedited consideration, it does not obviate the ordinary aspects of the North Carolina Rules of Civil Procedure." Defendants' counsel also noted that plaintiffs were seeking to

> void past actions of the board. We're not prepared today to address that and the implication it would have for action that's been taken, there's a broad range of action that's been taken they're asking to undo. So I'd say, in addition, that that's why we're not prepared to address the whole enchilada today.

Plaintiffs' counsel then addressed the issue regarding the scope of the relief sought, as follows:

> [O]n the issue of the rendering actions taken null and void, that is discussed at the end of our brief. The statute sets out, clearly appears to contemplate a compressed time frame for making decisions on that. In fact, it requires the Plaintiffs to file the action within 45 days of the incident complained of and that's what we've done. And clearly I think the statute as a whole invests the Court with an enormous amount of equitable discretion in fashioning appropriate relief in these instances. And so we think it would be appropriate if the Court deems it to be so, applying the factors, to consider that relief today, as well.

Without stating whether it intended to consider only the preliminary injunction or "the whole enchilada[,]" the trial court then heard the arguments of the parties.

Plaintiffs never mentioned a preliminary injunction during their first argument. They requested that the court grant the following relief:

> Number one, what we're asking for, Your Honor, is clear guidance from this Court that what happened on March 23rd was wrong; that it violated the open meetings law.
>
> . . . .

Number two, Your Honor, we're asking for clear guidelines going forward, including for May 18th, which I would just note, is the day after the 56th anniversary of the Supreme Court's decision in Brown versus Board of Education. We're asking for clear guidelines going forward that will prevent things like this from happening again.

Number one[sic], we're asking that there be no ticket policy.

. . . .

Number two [sic], we're asking them to be required to come up with some contingency plans for situations where the level of public interest and sustained engagement and the known desire for public attendance is so overwhelming, have some plans. What are our back up locations? Why should the News and Observer be the ones who have to track down alternative locations? . . . .[4]

Throughout their argument, defendants continued to stress that the trial court should consider only a preliminary injunction, although they also contended that plaintiffs were not entitled to a preliminary injunction. In response, plaintiffs stated:

Mr. Shanahan talks about the issue of the extraordinary remedy of the injunction. It is an extraordinary remedy. There's absolutely no doubt under the enabling statute and the open meetings law that the Court has that power. The statute expressly gives the Court the power to issue mandatory and prohibitory injunctions . . . . And the statute also gives the Court all that other broad discretion, and it really is in the Court's hand to exercise that discretion and to fashion a remedy that is consistent with the

4. This is apparently a reference to a letter sent on the morning of 23 March 2010 from Orage Quarles, III, president and publisher of *The News and Observer*, in Raleigh, N.C. to the Board, stating that the Fletcher Theater at the Progress Energy Performing Arts Center was available for the meeting to be held at 3:00 p.m. that same day and that *The News and Observer* and WRAL would pay the cost to rent the facility. Also included in the record is the affidavit from Steve Hammel, vice president and general manager of WRAL-TV in Raleigh, N.C., which states that he telephoned the Board on 23 March 2010 "to offer . . . the use of the auditorium at the Progress Energy Center for the Board meeting that afternoon, and that WRAL would pay any associated costs for use of the facility." However, we note that N.C. Gen. Stat. § 143-318.12(b)(2009) provides that if an "official meeting" will be held "at any time *or place* other than a time *or place* shown on the schedule" of regularly scheduled meetings, the public body must give notice of the change at least "48 hours before the time of the meeting." (Emphasis added.) Therefore, if the Board had accepted these offers made on the same day of the meeting, it would have violated N.C. Gen. Stat. § 143-318.12 by changing the meeting location from the regularly scheduled location without giving at least 48 hours advance notice.

principles and the letter of what is really trying to be achieved by this law.

. . . .

In closing, I would just say that the . . . statute and the case law gives this Court enormous discretion in this situation to fashion a remedy that's effective, that's realistic, pragmatic, and consistent with the spirit and the letter of the law, and that's what we would ask the Court to do.

At the end of the hearing, there was further colloquy between counsel and the trial court in which plaintiffs' counsel suggested that the trial court review the video of the 23 March 2010 COW meeting, which was available over the internet. The trial court stated that it would review the video, along with the other materials submitted by the parties. Defendants' counsel then noted that "As far as the March 23rd Committee of the Whole, you don't need that today, because that doesn't involve the preliminary injunction, does it?" The trial court responded, "Well, if I can look at it today, I would, if it's available." The hearing ended at 10:54 a.m. the trial court filed its order that afternoon at 4:10 p.m.

Based upon the hearing transcript and the provisions of the order, it is apparent that the trial court heard the case on the merits, tacitly denying defendants' request for additional time for discovery, and issued an order which denied plaintiffs' claims on the merits and therefore dismissed the case. Plaintiffs argue that the trial court's dismissal was error as it was "*ex mero motu*[,]" while defendants on cross-appeal argue that they were deprived of procedural due process rights by the trial court's refusal to continue the full hearing on the merits and making adverse findings of fact when defendant had no opportunity even to file an answer, much less conduct discovery.

N.C. Gen. Stat. § 143-318.16C (2009) reads as follows, in its entirety: "Actions brought pursuant to G.S. 143-318.16 or G.S. 143-318.16A shall be set down for immediate hearing, and subsequent proceedings in such actions shall be accorded priority by the trial and appellate courts." The statute is entitled "Accelerated hearing; priority." Our Courts have not ever considered the meaning or effect of setting an action "down for immediate hearing" as directed by N.C. Gen. Stat. § 143-318.16C. We find no prior cases which have addressed exactly how cases under the Open Meetings Law should be expedited or accelerated, although some prior cases have proceeded very quickly

from filing to disposition by the trial court. *See e.g. Gannett Pacific Corp. v. City of Asheville*, 178 N.C. App. 711, 711-12, 632 S.E.2d 586, 587 (Complaint filed 26 April 2005; final judgment entered 29 June 2005), *disc. review denied*, 360 N.C. 645, 638 S.E.2d 466 (2006); *Sigma Construction Co., Inc. v. Guilford County Board of Education*, 144 N.C. App. 376, 377-78, 547 S.E.2d 178, 179 (Complaint filed 16 March 2000; final judgment 25 April 2000), *disc. review denied*, 354 N.C. 366, 556 S.E.2d 578 (2001); *H.B.S. Contractors, Inc. v. Cumberland County Bd. of Educ.*, 122 N.C. App. 49, 52, 468 S.E.2d 517, 520 (1996) (Complaint filed 4 January 1995; judgment entered 1 March 1995). Yet the statute does not specify what type of hearing should be held "immediate[ly]" or the procedure which should be used. Based on prior cases, it is clear that the Rules of Civil Procedure do apply to claims under the Open Meetings Law. *See Frank v. Savage*, —— N.C. App. ——, ——, 695 S.E.2d 509, 512 (2010) (analysis of Open Meetings Law in the context of a N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) dismissal); *Hensey v. Hennessy*, —— N.C. App. ——, ——, 685 S.E.2d 541, 546 (2009) (the Rules of Civil Procedure "shall govern the procedure in the superior and district courts of the State of North Carolina in all actions and proceedings of a civil nature except when a differing procedure is prescribed by statute." (quoting N.C. Gen. Stat. § 1A-1, Rule 1)); *Campbell v. Greensboro*, 70 N.C. App. 252, 256-57, 319 S.E.2d 323, 326 ("Since [an annexation proceeding] is manifestly a 'proceeding of a civil nature,' the [rules of civil procedure] clearly apply to it, we believe, unless a different procedure is provided by statute, but only to the extent necessary to process the proceeding according to its nature."), *disc. review denied and appeal dismissed*, 312 N.C. 492, 322 S.E.2d 553 (1984). We find no prior case in which the trial court has heard an entire case on the merits quite so "immediately" as here. Yet in this case, we need not determine whether the trial court erred by hearing the case on the merits "immediate[ly]" after filing of the action because to the extent that this was error, the error was invited by plaintiffs and was not prejudicial to the defendants.

Plaintiffs repeatedly argue in their briefs that they were not asking the trial court to rule on the merits of the case on 14 May 2010. But upon careful examination of the complaint, the notice of hearing, the amended notice of hearing, the plaintiffs' memorandum submitted to the trial court, and the transcript of the hearing, it is apparent that plaintiffs did ask exactly that, and they got what they asked for. "[I]t is never wise to ask for something without being fully aware that you

may just get what you ask for." *Southwest Bank of Omaha v. Herting*, 208 Neb. 347, 349, 303 N.W.2d 504, 506 (1981) (citation omitted). Defendants objected, but the trial court elected to rule upon all of the claims raised by the complaint and motions. As to invited errors, we have noted that

> "[o]ur Courts have long held to the principle that a party may not appeal from a judgment entered on its own motion or provisions in a judgment inserted at its own request." *Templeton v. Apex Homes, Inc.*, 164 N.C. App. 373, 377, 595 S.E.2d 769, 771-72 (2004) (internal citation omitted) (plaintiffs were precluded from appealing entry of summary judgment because they invited error when "the parties joined together to encourage the court to enter summary judgment on all issues in order to proceed immediately to the question of remedy").

*In re Estate of Pope*, 192 N.C. App. 321, 330, 666 S.E.2d 140, 147 (2008), *disc. review denied*, 363 N.C. 126, 673 S.E.2d 129 (2009). An appellant is not in a position to object to provisions of a judgment which are

> in conformity with their prayer, and they are bound thereby. *Johnson v. Sidbury*, 226 N. C., 345, 38 S. E. (2d), 82; *Carruthers v. R.R.*, 218 N.C. 377, 11 S.E.(2d), 157. "A party cannot complain of an instruction given at his own request." *Bell v. Harrison*, 179 N.C. 190, 102 S.E. 200. Neither should he be permitted to challenge the correctness of provisions contained in a judgment which were inserted at his request or in conformity with his prayer. Ordinarily an appeal will not lie from an order entered at the request of a party, and "it is immaterial that such request was in the alternative," *Larson v. Hanson*, 210 Wis., 705, 242 N. W., 184. *Boyer et al. v. Burton*, 79 Ore., 662, 149 Pac., 83; *Silcox v. McLean*, 36 N. M., 196, 11 Pac. (2d), 541; *Schoren v. Schoren*, 110 Ore., 272, 222 Pac., 1096; *Blumenfeld & Co. v. Hamrick*, 18 Ala. App., 317, 91 Sou., 914; *In re Gurnsey's Estate*, 61 Cal., 178, 214 Pac., 487; *State v. Howell*, 139 La., 336, 71 Sou., 529.

*Dillon v. Wentz*, 227 N.C. 117, 123, 41 S.E.2d 202, 207 (1947). Therefore, although it may have been the better practice for the trial court to hear only the motion for preliminary injunction on 14 May 2010 and then to permit some time for development of the case by discovery before a full hearing on the merits, the plaintiffs have no right to complain that the trial court did exactly what they asked. Plaintiffs' argument that the trial court "dismissed" their complaint *ex*

*mero motu* is a misapprehension of the trial court's order. The trial court made findings of fact and conclusions of law and ruled upon the merits of plaintiffs' claims, and as there were no further claims to be determined, dismissed the case. This is no different than a judgment which "dismisses" a plaintiff's claim based upon a jury verdict which has found that the plaintiff is not entitled to the relief sought. *See Yancey v. Lea,* 354 N.C. 48, 51, 550 S.E.2d 155, 157 (2001) ("the trial court entered the jury's verdict and dismissed the action against defendants with prejudice.")

On the other hand, defendants did object to hearing the entire matter on the merits, both in their "Objection, Motion to Strike, and Motion for Appropriate Relief" and in oral argument at the hearing on 14 May 2010. But ultimately defendants suffered no prejudice from the "immediate" hearing, as the judgment is predominantly in their favor and denies the most significant relief sought by plaintiffs. Although defendants do not object to the trial court's disposition and ask that we affirm the judgment, they object to certain findings of fact and conclusions of law within the judgment which they perceive to be derogatory to them. Defendants ask us to remove these objectionable findings and conclusions, while affirming the order otherwise; they ask that we affirm the substance of the order dismissing plaintiffs' claims but remove from the order the parts they do not like. We reject this request as "inconsistent with the fundamental precept of Anglo-American jurisprudence that you cannot have your cake and eat it, too[.]" *I.T. Consultants, Inc. v. Islamic Republic of Pakistan,* 351 F.3d 1184, 1191 (D.C. Cir. 2003). Even if the findings of fact which defendants argue are not supported by the evidence were erroneous, they were not required to support the trial court's conclusions of law and decretal, which were essentially favorable to defendants. We have stated that

> [w]here there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings which do not affect the conclusions. *Wachovia Bank v. Bounous,* 53 N.C. App. 700, 281 S.E.2d 712 (1981); *Allen v. Allen,* 7 N.C. App. 555, 173 S.E.2d 10 (1970).

*Black Horse Run Property Owners Association-Raleigh, Inc. v. Kaleel,* 88 N.C. App. 83, 86, 362 S.E.2d 619, 622 (1987), *disc. review denied,* 321 N.C. 742, 366 S.E.2d 856 (1988). As discussed more fully below, we find that any errors in the order do not change the result.

### III. Standard of review

[2] Plaintiffs' arguments regarding our standard of review are based upon their misapprehension of the order as a dismissal which does not rule upon the merits of the case. In its response brief, defendants' argument as to our standard of review likewise misconstrues the order as a denial of a mandatory preliminary injunction. We must base our review on the order as it actually is, not as either party may have preferred it to be. As we have determined that the order was an adjudication on the merits, we must consider it as such. We have noted that

> [a]llegations that a party violated the Open Meetings Law are con-sidered by the Superior Court in its role as a trier of fact.
>
>> "It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's find-ings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992) (citation omitted). If sup-ported by competent evidence, the trial court's findings of fact are conclusive on appeal. *Finch v. Wachovia Bank & Tr. Co.*, 156 N.C. App. 343, 347, 577 S.E.2d 306, 308-09 (2003). "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Food Town Stores v. City of Salisbury*, 300 N.C. 21, 26, 265 S.E.2d 123, 127 (1980).
>
> *Gannett Pacific Corp. v. City of Asheville*, 178 N.C. App. 711, 713, 632 S.E.2d 586, 588 (2006). Whether a violation of the Open Meetings Law occurred is a question of law. We therefore apply *de novo* review to this portion of the decision of the trial court.

*Knight v. Higgs*, 189 N.C. App. 696, 699-700, 659 S.E.2d 742, 745-46 (2008).

Plaintiffs also challenge the trial court's denial of affirmative relief based upon the findings of fact and conclusions of law. We review the trial court's determination as to the appropriate remedy under N.C. Gen. Stat. § 143-318.16A (2009) for abuse of discretion.

> Whether to declare a board's action null and void is within the discretion of the trial court, *see In re Hardy*, 294 N.C. 90, 97, 240 S.E.2d 367, 372 (1978) (where "may" is used, it will ordinarily be construed as permissive and not mandatory), and can be reversed

on appeal only if the decision is "manifestly unsupported by reason" and "so arbitrary that it could not have been the result of a reasoned decision." [*White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)].

*Dockside Discotheque, Inc. v. Board of Adjustment of Town of Southern Pines*, 115 N.C. App. 303, 307, 444 S.E.2d 451, 453, *disc. review denied*, 338 N.C. 309, 451 S.E.2d 634 (1994).

Plaintiffs have not argued that the findings of fact are not supported by the evidence. Under Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure, the brief is to include the contentions of the appellant "with respect to each issue presented. Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." As plaintiffs have not argued that the findings of fact are not supported by the evidence, "the finding[s] [are] presumed to be supported by competent evidence and [are] binding on appeal." *Langston v. Richardson*, ── N.C. App. ──, ──, 696 S.E.2d 867, 870 (2010) (citation and quotation marks omitted). Thus, the trial court's findings of fact "are presumed to be supported by competent evidence and are binding on this Court." *Id.*

Plaintiffs do argue, however, that the trial court's conclusions of law were in error. Plaintiffs argue that "[t]o the extent this Court determines that adjudication on the merits of Appellants' claims was proper, the express terms of the trial court's ruling compel a conclusion that the Board violated the Open Meetings Law." We will therefore review the trial court's conclusions of law *de novo. See Knight*, 189 N.C. App. at 700, 659 S.E.2d at 746.

IV. Plaintiffs' appeal

[3] Plaintiffs argue that the trial court's findings of fact compel a conclusion that the Board violated the Open Meetings Law. Plaintiffs call our attention to the following findings and conclusions of law:

5. In anticipation of an extraordinarily large crowd for the March 23, 2010 meeting of the Board and the COW, the Board initiated measures to handle the crowd.

6. The measures involved the issuance of tickets to the Board meeting and limiting the public's attendance to those who had tickets, excluding the public from the room in which the COW met, and the provision of overflow space in which those who could not enter the meeting room could observe the meetings on live electronic audiovisual feeds.

7. Some of the plaintiffs were prevented or deterred from attending one or both of the meetings as a result of the measures.

8. The ticketing procedures changed over the course of issuance without notice to the public.

9. One early ticketing requirement required the holder of a ticket to remain on the premises for several hours prior to the meeting.

10. One of the plaintiffs was denied accommodation for a disability at meetings on March 2.

Based upon these findings, the trial court concluded, in part, as follows:

8. A ticketing procedure is not necessarily unreasonable with adequate public notice.

9. A ticketing procedure requiring a ticket holder to remain on the premises for hours preceding a meeting is unreasonable.

10. Complete exclusion of members of the public from meetings of the COW prior to the meetings is unreasonable.

11. Failing to make accommodations for members of the public who are disabled is unreasonable.

The trial court therefore concluded that three of the Board's actions were "unreasonable": (1) a ticketing procedure requiring a ticket holder to remain on the premises for hours preceding a meeting; (2) complete exclusion of members of the public from the COW meetings; and (3) failure to make accommodations for a disabled member of the public. The trial court also made a conclusion of law that "[t]he Board is required by North Carolina General Statute §143-318.9 et.seq. (the Open Meetings Law) to take reasonable measures to provide for public access to its meetings."

Although the order concludes that certain actions were "unreasonable," it does not specifically state that these actions were violations of the Open Meetings Law, despite its conclusion that the Open Meetings Law requires defendants to "take reasonable measures to provide for public access to its meetings." We must therefore consider the legal standard by which the trial court should determine whether an Open Meetings Law violation has occurred.

N.C. Gen. Stat. § 143-318.10(a) (2009), provides in pertinent part as follows: "Except as provided in G.S. 143-318.11, 143-318.14A, 143-318.15, and 143-318.18, each official meeting of a public body shall be open to the public, and any person is entitled to attend such a meeting." All parties agree that the Board and the COW are both "public bodies" as defined by N.C. Gen. Stat. § 143-318.10(b); nor is there any dispute that the 23 March 2010 meetings of the Board and the COW were "official meetings" as defined by subsection (d) of N.C. Gen. Stat. § 143-318.10. The issue presented by this case is whether the 23 March 2010 meetings were "open to the public." This also requires us to consider the meaning of the provision that "any person is entitled to attend such a meeting." These are issues of first impression under North Carolina's Open Meetings Law.

When a meeting is held in secret and without prior notice, or no member of the public is permitted to attend and no media access is permitted, a violation of the Open Meetings Law is clear. The situation we address here may perhaps be best described as an allegation of insufficient "openness" of the meeting. Saying that a meeting is "open" tells us very little, so courts generally consider many factors to determine if a meeting is truly open to the public. These factors may include the "notice for meetings, distribution of agendas, preparation and availability of minutes of meetings, location and characteristics of the meeting place, recordation of minutes, and the like." Ann Taylor Schwing & Constance Taylor, *Open Meeting Laws 2d* § 5.1 (2000). Here, it is undisputed that proper public notice of the time and location of the meetings was given, substantial numbers of members of the general public attended the Board meeting and were given adequate time and opportunity to comment, and media outlets covered both meetings. It is also undisputed that due to heightened public interest in the issues before the Board, attendance at the COW and Board meetings had been increasing and, in fact, the Board expected a high attendance for the 23 March 2010 meetings. It is undisputed that substantially more members of the public than could be legally admitted to the meeting rooms wanted to attend, so many were excluded from the meeting rooms.

Plaintiffs do not clearly articulate the standard by which they claim a court should determine whether an Open Meetings Law violation has occurred but imply that exclusion of any person who wishes to attend is a violation, as the statute says that "any person is entitled to attend such a meeting." N.C. Gen. Stat. § 143-318.10(a). Plaintiffs seem to argue that the exclusion of even one person from a meeting

may be a violation, even if the meeting room is filled to its legally permitted capacity by other members of the public. In contrast, defendants argue that the Open Meetings Law establishes a standard under which

> a public body may not admit only certain categories of the public (i.e., registered voters, or Wake County residents) and exclude other categories of the public from a public meeting; any person may attend, meaning that attendance may not be limited to a particular classification or group of people. "The open meetings laws demand the *possibility* of public attendance, however, *not the certainty of attendance*. The exclusion of those who arrive when the adequately sized meeting room is full . . . does not convert an open meeting into a closed one." Ann Taylor Schwing & Constance Taylor, *Open Meetings Laws*, § 5.90 (1994).

(Emphasis added by defendants.)

Defendants also argue that we must consider the provisions of the Open Meetings Law *in pari materia* with other statutory requirements applicable to school board meetings. N.C. Gen. Stat. § 115C-51 (2009), which governs the public comment period during regular meetings, provides in pertinent part that:

> The local board of education shall provide at least one period for public comment per month at a regular meeting of the board. The board may adopt reasonable rules governing the conduct of the public comment period, including, but not limited to, rules (i) fixing the maximum time allotted to each speaker, (ii) providing for the designation of spokesmen for groups of persons supporting or opposing the same positions, (iii) providing for the selection of delegates from groups of persons supporting or opposing the same positions *when the number of persons wishing to attend the hearing exceeds the capacity of the hall,* and (iv) providing for the maintenance of order and decorum in the conduct of the hearing.

(Emphasis added.) Thus, N.C. Gen. Stat. § 115C-51(iii) recognizes that at times, the number of people who want to attend a meeting may exceed the "capacity of the hall" and makes specific provision for the Board to consider the comments of those with opposing viewpoints in this situation. If the exclusion of even one person from a school board meeting because of the capacity of the room would render the meeting illegal under the Open Meetings Law, N.C. Gen. Stat. § 115C-51(iii) would be unnecessary.

GARLOCK v. WAKE CNTY. BD. OF EDUC.

[211 N.C. App. 200 (2011)]

Although North Carolina has never confronted the issue of insufficient "openness" of a public meeting, some other states have. *Gutierrez v. City of Albuquerque*, 96 N.M. 398, 631 P.Ed 304 (1981) presents a very similar factual situation. In *Gutierrez*, the Court considered "The sole issue [of] . . . whether the fact that the Council Chambers were not large enough to accommodate all of the large crowd that appeared to attend the meeting, rendered invalid the approval of Elliott's application on the ground that it was not a public meeting." *Id.* at 399, 631 P.Ed at 305. An application "for permission to sell alcoholic beverages within 300 feet of a school generated a great deal of public interest and controversy" so that "[a]n overflow crowd arrived to attend the City Council meeting of July 28, 1980." *Id.* The crowd exceeded the meeting room's capacity of

> 156 persons. The rest of the crowd (including Petitioners) had to remain outside the Chambers. As persons left the Chambers, others were allowed to enter. Loudspeakers were set up outside the Chambers and were operative during at least a portion of the meeting so that those outside the Chambers could listen to the proceedings. The meeting was broadcast on an Albuquerque radio station and received extensive media coverage. A motion was made to move the meeting to a larger room at the beginning of the meeting, but was denied for a variety of reasons, including inadequate sound systems at alternative locations. Members of the public who registered were allowed to present their views to the Council. Proponents of the agenda items were allowed one hour to present their views; opponents of the items were ultimately allowed one hour and fifteen minutes to present their views.

*Id.* The petitioners in *Gutierrez* argued that "the meeting was not a public meeting as required by Section 10-15-1 of New Mexico's Open Meetings Act on the ground that they were not allowed to attend and listen to the proceedings." *Id.* The applicable statute provided that "The formation of public policy . . . shall not be conducted in closed meeting. All meetings of any public body, except the legislature, shall be public meetings and *all persons so desiring shall be permitted to attend and listen* to the deliberations and proceedings." *Id.* (emphasis in original.) Petitioners contended that the provision that "all persons so desiring shall be permitted to attend and listen" meant that "all must be in the room or in the presence of the Council members, regardless of the size of the crowd and the limitations of the meeting hall." *Id.* at 400, 631 P.Ed at 306.

The Supreme Court of New Mexico rejected the petitioners' argument, noting that

> [t]his narrow view would permit invalidation of any action by a public body by the simple method of overflowing the Chambers. Thus, the Council, to be safe, would have to hire the football stadium or hold its meetings in a wide open space. Even then, *reductio ad absurdum*, if a tree or other obstruction stood between an individual and the Council, he could claim that he was not permitted to "attend".
>
> To "attend and listen" is equally susceptible of an interpretation that persons desiring to attend shall have the opportunity to do so, that no one will be systematically excluded or arbitrarily refused admittance, and that the meeting will not be "closed" to the public. The circumstances of this case make manifest the reasonableness of such an interpretation. Everyone desiring to attend the City Council meeting was afforded an opportunity to do so, but once the hall was filled, no others could be admitted.

*Id.*

The language of North Carolina's Open Meetings Law provides that "any person is entitled *to attend* such a meeting," N.C. Gen. Stat. § 143-318.10(a), but it does not include the words "and listen" as does the New Mexico statute. (Emphasis added.) Yet the two statutes are essentially the same; it would be logical to distinguish the two by saying that the North Carolina statute grants the right to "attend" a meeting but not to "listen" to the proceedings. We find the New Mexico court's analysis of its statute to be persuasive authority in our analysis of the North Carolina statute.

We are also guided by the purpose of the Open Meetings Law in our interpretation of N.C. Gen. Stat. § 143-318.10(a).

> The singular goal of statutory construction "is to give effect to the intent of the Legislature." *Clark v. Sanger Clinic, P.A.*, 142 N.C. App. 350, 354, 542 S.E.2d 668, 671, *disc. review denied*, 353 N.C. 450, 548 S.E.2d 524 (2001) (citation omitted). "To this end, the courts must refer primarily to the language of the enactment itself. [citation omitted] A statute that *"is free from ambiguity, explicit in terms and plain of meaning"* must be enforced as written, without resort to judicial construction." *Id.* at 354, 542 S.E.2d at 671-72 (emphasis in original) (citations omitted).

*Boney Publishers, Inc. v. Burlington City Council,* 151 N.C. App. 651, 655, 566 S.E.2d 701, 704 (2002) (citation and quotation marks omitted). The exceptions to the Open Meetings Law are set forth in N.C. Gen. Stat. § 143-318.11 (2009), and this Court has held that

> exceptions to the operation of open meetings laws must be narrowly construed. *See Publishing Co. v. Board of Education,* 29 N.C. App. 37, 47, 223 S.E.2d 580, 586 (1976) (citations omitted) ("While neither our Supreme Court nor this Court has spoken on the question of strict construction as it pertains to our open meetings law, courts of other states have held that exceptions to their open meeting statutes allowing closed meetings must be narrowly construed since they derogate the general policy of open meetings.").

*Id.* at 655-56, 566 S.E.2d at 704. But no exception to the Open Meetings Law is at issue in this case, and the phrases "open to the public" and "any person is entitled to attend such a meeting[,]" *see* N.C. Gen. Stat. § 143-318.10(a), are susceptible to different interpretations. "If a statute is unclear or ambiguous, however, courts must resort to statutory construction to determine legislative will and the evil the legislature intended the statute to suppress." *State v. Jackson,* 353 N.C. 495, 501, 546 S.E.2d 570, 574 (2001) (citation omitted). In addition, other states which have addressed the issue have consistently held that the Open Meeting Laws, other than the exceptions, should be liberally construed "in favor of open meetings and full disclosure." Schwing, *supra,* § 3.6. In sum, both the requirements for meetings of public bodies to be open and statutory exceptions to open meetings are construed in favor of public access.

We must therefore interpret these phrases in light of the legislative intent and "the evil the legislature intended the statute to suppress," using a liberal interpretation which favors full and open access. *See Jackson,* 353 N.C. at 501, 546 S.E.2d at 574. We have some additional guidance from the Open Meeting Law statutes themselves. First, N.C. Gen. Stat. § 143-318.9 (2009), states that

> Whereas the public bodies that administer the legislative, policy-making, quasi-judicial, administrative, and advisory functions of North Carolina and its political subdivisions exist solely to conduct the people's business, it is the public policy of North Carolina that the hearings, deliberations, and actions of these bodies be conducted openly.

Thus, the statement of North Carolina's policy that meetings be conducted "openly" gives only general guidance, as our question is whether a meeting is "open" if "any person" is excluded for any reason. *See* N.C. Gen. Stat. § 143-318.10. Yet considering the Open Meetings Law statutes as a whole, we see that the legislature did enumerate some of the "evils" which the legislature intended to suppress. N.C. Gen. Stat. § 143-318.16A provides that if the court has found a violation of the Open Meetings Law, it should consider the following factors in determining the appropriate remedy:

> (1) The extent to which the violation affected the substance of the challenged action;
>
> (2) The extent to which the violation thwarted or impaired access to meetings or proceedings that the public had a right to attend;
>
> (3) The extent to which the violation prevented or impaired public knowledge or understanding of the people's business;
>
> (4) Whether the violation was an isolated occurrence, or was a part of a continuing pattern of violations of this Article by the public body;
>
> (5) The extent to which persons relied upon the validity of the challenged action, and the effect on such persons of declaring the challenged action void;
>
> (6) Whether the violation was committed in bad faith for the purpose of evading or subverting the public policy embodied in this Article.

Although these factors are applicable only where the trial court has already found a violation of N.C. Gen. Stat. § 143-318.16A, we believe that they are instructive as to the factors the General Assembly determined important in the court's consideration of the seriousness of a violation and whether the violation requires the court to take action to remedy the violation, which may include voiding any action taken at the illegal meeting. Based upon these factors, the legislature's purpose for N.C. Gen. Stat. § 143-318.10 is to ensure that public bodies receive public input regarding the substance of the public body's actions, that the public has the opportunity to have knowledge and understanding of the public body's deliberations and actions, and that public bodies to act in good faith in making provision for the public's knowledge and participation in its meetings.

Therefore, we reject the plaintiffs' literal reading of N.C. Gen. Stat. § 143-318.10 as providing that the exclusion of "any person" because a meeting room of appropriate size is at capacity would cause a meeting not to be "open" as contemplated by the Open Meetings Law. We instead hold that the trial court used the correct legal standard in evaluating the actions of the defendants, as it concluded that "The Board is required by North Carolina General Statute § 143-318.9 *et. seq.* (the Open Meetings Law) to take reasonable measures to provide for public access to its meetings."

This standard of reasonableness of opportunity for public access to the meeting of a public body is consistent with the interpretation of the Open Meetings Laws of all other states which have considered the issue. Several other states have considered how to interpret similar statutory language, but no state has ever determined that *any* or *all* persons who wish to attend a meeting must be permitted to do so to be in compliance with the Open Meetings Law, where the meeting is held in a room of a reasonable size for the particular meeting. As noted above, the New Mexico Supreme Court in *Gutierrez* held that its open meetings statute "mean[t] only that the governmental entity must allow reasonable public access for those who wish to attend and listen to the proceedings." 96 N.M. at 401, 631 P.2d at 307. The *Gutierrez* court noted that many other states had also held that public meetings must be in substantial compliance with their open meetings laws:

> Substantial compliance has occurred when the statute has been sufficiently followed so as to carry out the intent for which it was adopted and serve the purpose of the statute. *Smith v. State,* 364 So.2d 1 (Ala.Cr.App.1978). This doctrine has been applied to open meetings laws by the courts of several states. *See Karol v. Bd. of Ed. Trustees, Etc.,* [122 Ariz. 95, 593 P.2d 649, 651 (1979)]; *City of Flagstaff v. Bleeker,* 123 Ariz. 436, 600 P.2d 49 (Ct.App.1979); *Houman v. Mayor and Council, Etc.,* 155 N.J.Super. 129, 382 A.2d 413 (1977); *McConnell v. Alamo Heights Ind. Sch. Dist.,* 576 S.W.2d 470 (Tex.Civ.App.1978); *Toyah Ind. Sch. Dist. v. Pe-cos-Barstow Ind. Sch. Dist.,* 466 S.W.2d 377 (Tex.Civ.App.1971); *see also Edwards v. City Council of City of Seattle,* 3 Wash. App. 665, 479 P.2d 120 (1970).

*Id.*

The Arizona Supreme Court, in *Karol v. Board of Educ. Trustees,* 122 Ariz. 95, 593 P.2d 649 (1979) likewise rejected a literal interpreta-

tion of Arizona's open meetings law which provided that "All official meetings at which any legal action is taken by governing bodies shall be public meetings and all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings," holding that "[t]he intent of the legislature was to open the conduct of the business of government to the scrutiny of the public and to ban decision-making in secret . . . . A meeting held in the spirit of this enunciated policy is a valid meeting." *Id.* at 97 n.2, 593 P.2d at 651 n.2.

Therefore, to the extent that the Board permitted reasonable public access to the 23 March 2010 meetings, it substantially complied with N.C. Gen. Stat. § 143-318.10, and no Open Meetings Law violation has occurred. To the extent that defendants acted unreasonably as to public access to the 23 March 2010 meetings, it did violate the Open Meetings Law. The trial court was required to consider the reasonableness of the Board's actions as to the alleged violations of the Open Meetings Law, and the trial court did, in fact, make these factual determinations and conclusions of law. Plaintiffs have not argued in their brief that the trial court's findings of fact were not supported by the evidence. Thus, before we consider whether the findings of fact support the trial court's conclusions of law, we will turn to defendants' cross appeal, as defendants do challenge some findings of fact. We will then consider whether the findings of fact support the conclusions of law, as both plaintiffs and defendants argue, for different reasons, that some conclusions of law are in error.

### V. Defendants' cross appeal

Defendants filed a notice of cross appeal as to certain findings of fact and conclusions of law. As noted above, defendants objected to the trial court's consideration of the case on its merits, but we have already determined that the order as entered by the trial court did not prejudice defendants as the outcome was favorable to defendants. Despite the trial court's denial of relief to plaintiffs, defendants argue that the following findings of fact are not supported by the evidence:

6. The measures involved the issuance of tickets to the Board meeting and limiting the public's attendance to those who had tickets, excluding the public from the room in which the COW met, and the provision of overflow space in which those who could not enter the meeting room could observe the meetings on live electronic audiovisual feeds.

7. Some of the plaintiffs were prevented or deterred from attending one or both of the meetings as a result of the measures.

8.   The ticketing procedures changed over the course of issuance without notice to the public.

. . . . .

10. One of the plaintiffs was denied accommodation for a disability at meetings on March 2.

Defendants also argue that the following conclusions of law were not supported by the findings of fact:

9.   A ticketing procedure requiring a ticket holder to remain on the premises for hours preceding a meeting is unreasonable.

10.  Complete exclusion of members of the public from meetings of the COW prior to the meetings is unreasonable.

11.  Failing to make accommodations for members of the public who are disabled is unreasonable.

A. Challenged findings of fact

Although defendants argue that certain findings of fact are not supported by the evidence, the evidence of both parties is in substantial agreement as to what happened; the dispute is whether the Board's actions were reasonable. Defendants do not dispute that they adopted a policy on the morning of March 23 to issue tickets for the meetings; that the Board originally required ticketholders to stay on the premises but later eliminated this requirement; that notice of the change was given only to those persons on the premises and was not published on the Board's website; that some people were unable to attend the meetings for lack of sufficient space; or that plaintiff Garlock suffered from a medical condition which made it difficult for her to stand for long periods of time and she did not attend the 23 March 2010 meeting because of her prior experience of having to stand for a long time before getting a seat in the meeting room at the 2 March 2010 meeting. Thus, the real issue is whether the findings of fact support the conclusions of law, and this is an issue which we review *de novo. Knight*, 189 N.C. App. at 699-700, 659 S.E.2d at 746. We will consider both plaintiffs' and defendants' arguments as to the conclusions of law.

B. Challenged conclusions of law

We must now examine each of defendants' challenges to conclusions of law as to reasonableness of the Board's actions.

## 1. Ticketing procedure

The trial court concluded that a ticketing procedure requiring a ticket holder to remain on the premises for hours preceding a meeting was unreasonable. Although defendants make various arguments regarding the last-minute adoption of this policy and changes in its application during the day on 23 March 2010, as stated above, they do not actually contest the facts found by the trial court. In our *de novo* review of the trial court's conclusion of law, we hold that the trial court properly found that the ticketing procedure was unreasonable in the manner in which it was used on 23 March 2010. N.C. Gen. Stat. § 143-318.12(a) provides that that if a public body has established a "schedule of regular meetings," it must keep this schedule on file, and if "a public body changes its schedule of regular meetings, it shall cause the revised schedule to be filed as provided in subdivisions (1) through (4) of this subsection at least seven calendar days before the day of the first meeting held pursuant to the revised schedule." N.C. Gen. Stat. § 143-318.12(b) provides that "If a public body holds an official meeting at any time or place other than a time or place shown on the schedule filed pursuant to subsection (a) of this section, it shall give public notice of the time and place of that meeting as provided in this subsection." One of the requirements of the notice in the change of "time or place" of an official meeting is that the "notice shall be posted and mailed, e-mailed, or delivered at least 48 hours before the time of the meeting." N.C. Gen. Stat. § 143-318.12(b)(2). But notice of the location and time of the meeting is worthless if a person planning to attend a meeting is not also informed that a ticket will be required. Without notice of the ticketing requirement, a member of the public may show up at the announced time and location for the meeting, only to be denied admission for lack of a ticket. Thus, under N.C. Gen. Stat. § 143-318.12, a public body's meeting notice must include any information reasonably necessary to give members of the public the opportunity to attend the meeting, if information beyond the time and location is necessary, as it was here. Thus, a ticketing procedure with proper advance notice may be reasonable, as also found by the trial court.

## 2. Complete exclusion of members of the public from the COW meetings

Defendants again do not dispute that there was no seating available for members of the public for at least the portion of the COW meeting addressing the budget, as all seats were filled by staff members; only after some staff members left were members of the public permitted

to enter. The parties also agree that there was media coverage of the entire COW meeting. Yet media coverage alone does not render a meeting open; a reasonable opportunity for access by members of the public must be made. The complete exclusion of members of the public from the COW meeting for a significant portion of the meeting is the most obvious violation of the Open Meetings Law in this case. The trial court found the Board's rationale of convenience of holding the COW meeting in a smaller room to be unreasonable under the circumstances, and we agree, particularly as there was a larger room immediately available *in the same building*, so that a last-minute change in the location of the COW meeting would not violate the statutory notice requirements as to the location of the meeting. *See* N.C. Gen. Stat. § 143-318.12. The convenience of the members of the COW and staff was not a sufficient reason to deny public access. *See* *Canney v. Board of Public Instruction of Alachua County*, 278 So.2d 260, 264 (Fla. 1973) ("Even though their intentions may be sincere, such boards and agencies should not be allowed to circumvent the plain provisions of the statute. The benefit to the public far out-weighs the inconvenience of the board or agency.")

3. Failure to make accommodations for a disabled member of the public

The trial court's conclusion regarding a lack of reasonable accommodation of a disabled person is distinct from the others which defendants challenge. Plaintiffs presented evidence that plaintiff Garlock suffers from metastatic stage four cancer and that she was unable to stand for a long period of time. In her affidavit, plaintiff Garlock explained that at a prior Board meeting on 2 March 2010, she stood in the hall outside the Board meeting room for about an hour. She explained her medical situation to a security guard and asked to sit in one of several empty chairs in the room, but he told her to wait until a break in the meeting to see if any seats were available. Although she was eventually able to get a seat in the meeting room, her experience caused her to believe that she could not safely attend future meetings because of the lack of adequate accommodations for her disability. This evidence supports the trial court's finding of fact No. 10, although the finding does not identify the disabled party or the nature of the disability. It is obvious from the record that the finding must be based upon plaintiff Garlock, as she was the only person alleged to be disabled and the only plaintiff who made assertions regarding lack of accommodation of disability.

GARLOCK v. WAKE CNTY. BD. OF EDUC.

[211 N.C. App. 200 (2011)]

The Open Meetings Law does not include any provision regarding accommodation at public meetings of a disabled member of the public as opposed to a non-disabled member of the public. For purposes of the Open Meetings Law, all members of the public are treated the same. *See* N.C. Gen. Stat. § 143-318.10. If we were to accept plaintiffs' argument that a disabled person's need to sit must be accommodated by giving that person a seat in preference to a non-disabled person who also wants to attend the meeting, this would change the "first come, first served" nature of access to public meetings to a rule which favors members of the public who claim to have a superior right to attend the meeting for some reason not addressed by the Open Meetings Law. Where a meeting room is filled to capacity, giving a seat to one person necessarily means that another person who is also standing in the hall and who also wants to attend the meeting will not be allowed to sit.

Certainly, a public body may provide specially modified seating areas to accommodate disabled members of the public; this type of accommodation may well be required by other state and federal laws, but that is not the claim presented by plaintiffs in this case. There are other potentially applicable state and federal statutes which govern access to public facilities by disabled persons, but those statutes are not at issue here. *See* the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* and the Persons with Disabilities Protection Act, N.C. Gen. Stat. § 168A-1, *et seq.* The factual allegations of plaintiffs' complaint appear to be alluding to N.C. Gen. Stat. § 168A-1, *et seq.*, the Persons with Disabilities Protection Act. Even if we assume that plaintiffs were basing their claim in part upon Chapter 168A or that Chapter 168A is potentially applicable to the Board and COW meetings as alleged by plaintiffs, we note that plaintiffs did not make allegations or present evidence sufficient to state a claim under Chapter 168A. For example, N.C. Gen. Stat. § 168A-4(a) (2009) states that "reasonable accommodation duties" do not arise until a

> qualified person with a disability requesting a reasonable accommodation . . . apprise[s] the employer, employment agency, labor organization, or place of public accommodation of his or her disabling condition, submit[s] any necessary medical documentation, make[s] suggestions for such possible accommodations as are known to such person with a disability, and cooperate[s] in any ensuing discussion and evaluation aimed at determining possible or feasible accommodations.

There is no allegation or evidence that after her experience at the 2 March 2010 meeting plaintiff Garlock submitted any medical documentation to defendants, made suggestions for accommodations, or cooperated in any "ensuing discussion and evaluation" regarding accommodations. *See id.* She asked to sit in a chair in the board meeting room; a chair was not immediately available, at least in the board meeting room; and she later obtained a seat in the meeting room. Her alleged medical need was for a place to sit, but she claims that "reasonable accommodation" entitles her to a seat *only* in the meeting room, not somewhere else in the Board's building, even though all of the seats in the meeting room were filled by other members of the public who had an equal right to attend the meeting. Although we have great sympathy for plaintiff Garlock's situation, her medical condition is simply not relevant to the determination of whether an Open Meetings Law violation occurred. We therefore find that the trial court committed an error of law as to Conclusion of Law No. 11, as there was no legal difference between plaintiff Garlock and the other plaintiffs, or any other member of the public, for purposes of the Open Meetings Law. The trial court's conclusion of law that "[f]ailing to make accommodations for members of the public who are disabled is unreasonable" in this situation is tantamount to a conclusion that not permitting every member of the public who wanted to have a seat in the Board meeting room to sit there was unreasonable and thus a violation of the Open Meetings Law. This is not the standard required by N.C. Gen. Stat. § 143-318.10. We therefore vacate conclusion of law No. 11 as it is inconsistent with the requirements of N.C. Gen. Stat. § 143-318.10. *See News & Observer Pub. Co. v. Interim Bd. of Ed. for Wake County,* 29 N.C. App. 37, 51, 223 S.E.2d 580, 589 (1976) (Affirming the order while vacating provisions of the order which were not supported by requirements of statute, noting that "[n]either party has cited, and our research fails to disclose, any statute that specifically provides for notice of a special meeting.")

## VI. Remedy

As we have affirmed the trial court's conclusions of law as to violations of the Open Meetings Law in the ticketing policy as practiced on 23 March 2010 and the exclusion of the public from the COW meeting, we must now consider whether the trial court abused its discretion by its denial of affirmative relief to the plaintiffs. *See Dockside Discotheque, Inc.,* 115 N.C. App. at 307, 444 S.E.2d at 453. Plaintiffs argue that even though the trial court found that defendants' actions as to the ticketing policy as practiced on 23 March 2010 and the exclu-

sion of the public from the COW meeting were unreasonable and therefore in violation of the Open Meetings Law, the trial court erred by not clearly stating that these were violations of the Open Meetings Law or granting other relief.

Plaintiffs note that

> [a] judicial determination that a public body has violated the Open Meetings Law requires a separate analysis and standard from the determination of the appropriate remedies. This Court has upheld or recognized violations of the Open Meetings Law while also ruling that the prevailing appellants were not entitled to a declaration that the actions taken by the liable defendant governing body should be invalidated.

We agree that this distinction is not clearly made in the trial court's order but find no abuse of discretion as to the trial court's denial of affirmative relief.

The Open Meetings Law requires a two-step analysis. First, the trial court must consider whether a violation of the Open Meetings Law has occurred; that is, whether the public body has taken reasonable measures to provide for public access to its meetings. If no violation has occurred, the analysis stops at step one. If there was a violation, the court must consider step two, which is identifying the appropriate remedy. The trial court may consider remedies under N.C. Gen. Stat. § 143-318.16, which governs injunctive relief, and N.C. Gen. Stat. § 143-318.16A, which provides for "Additional remedies for violations of Article." N.C. Gen. Stat. § 143-318.16A provides as follows in pertinent part:

> (a) Any person may institute a suit in the superior court requesting the entry of a judgment declaring that any action of a public body was taken, considered, discussed, or deliberated in violation of this Article. Upon such a finding, the court may declare any such action null and void. Any person may seek such a declaratory judgment, and the plaintiff need not allege or prove special damage different from that suffered by the public at large. The public body whose action the suit seeks to set aside shall be made a party. The court may order other persons be made parties if they have or claim any right, title, or interest that would be directly affected by a declaratory judgment voiding the action that the suit seeks to set aside.

. . . .

(c) In making the determination whether to declare the challenged action null and void, the court shall consider the following and any other relevant factors:

(1) The extent to which the violation affected the substance of the challenged action;

(2) The extent to which the violation thwarted or impaired access to meetings or proceedings that the public had a right to attend;

(3) The extent to which the violation prevented or impaired public knowledge or understanding of the people's business;

(4) Whether the violation was an isolated occurrence, or was a part of a continuing pattern of violations of this Article by the public body;

(5) The extent to which persons relied upon the validity of the challenged action, and the effect on such persons of declaring the challenged action void;

(6) Whether the violation was committed in bad faith for the purpose of evading or subverting the public policy embodied in this Article.

(d) A declaratory judgment pursuant to this section may be entered as an alternative to, or in combination with, an injunction entered pursuant to G.S. 143-318.16. . . .

It is apparent from the trial court's order that in step one, it found three violations of the Open Meetings Law: the ticketing procedure as practiced on 23 March 2010; exclusion of the public from the COW meeting; and failure to accommodate a disabled person. As discussed above, the trial court erred as to the third violation, as disability is not a consideration under the Open Meetings Law, but the trial court properly found violations as to the ticketing procedure and exclusion of the public from the COW meeting. The trial court then noted its conclusions as to each of the relevant factors under N.C. Gen. Stat. § 143-318.16A in determining what action to take in regard to the violations. Specifically, the trial court stated that[5]:

---

5. For ease in comparison of the trial court's conclusions to the factors listed in N.C. Gen. Stat. § 143-318.16A, we have quoted the conclusions in the same order as the corresponding subsections in the statute as quoted above. The trial court addressed each subsection except (c)(5), which was not applicable here as there were "no persons [who] relied upon the validity of the challenged action" so the trial court could

13. The Court cannot conclude on this record that any alleged violation of the Open Meetings Law affected the substance of any action of the Board.

. . . .

16. The Board makes reasonable efforts to conduct its business in the open and in view of the public.

17. Meetings of the Board and the COW are open to the public as contemplated by the Open Meetings Law.

. . . .

14. The Court cannot conclude on this record that any alleged violation of the Open Meetings Law prevented or impaired public knowledge or understanding of the people's business.

. . . .

18. The Board is taking reasonable action to implement measures to address alleged past violations of the Open Meetings Law.

. . . .

12. The Court cannot conclude on this record that the Board engages in continuous violations of the Open Meetings Law or that past violations, if any, will reoccur.

. . . .

15. The Court cannot conclude on this record that any alleged violation was committed in bad faith for the purpose of evading or subverting the public policy embodied in the Open Meetings Law.

The trial court addressed each of the applicable factors under N.C. Gen. Stat. § 143-318.16A and found no basis for invalidation of the Board's actions or any other affirmative relief, so the trial court ordered none. Essentially, the trial court found that the violations happened only on 23 March 2010, that they did not affect the substance of the Board's actions, that they were not committed in bad faith, and that the Board had in the past made and was continuing to make reasonable efforts to comply with the Open Meetings Law. For these reasons, despite the fact that violations had occurred, the trial court determined that no affirmative relief was warranted. This determination was based upon consideration of the statutory factors and thus was a proper exercise of the trial court's discretion.

not consider "the effect on such persons of declaring the challenged action void." N.C. Gen. Stat. § 143-318.16A.

IN RE ESTATE OF GAINEY v. SOUTHERN FLOORING & ACOUSTICAL CO.

[211 N.C. App. 233 (2011)]

Plaintiffs argue that there is a need for a declaration by the court that a violation occurred, even if no relief is granted, so that defendants will not repeat the violations in the future. We agree, but we also find that the trial court did just that. Plaintiffs may have wished for the order to be worded differently, but the determinations were made and there is no need to remand the order to the trial court to restate its findings or conclusions more artfully. In fact, we have fully considered these findings and conclusions as to the violations and we have affirmed the trial court's conclusions of law as to two violations of the Open Meetings Law. The trial court did not abuse its discretion in denying additional relief.

VII. Conclusion

For the reasons stated above, we affirm the order of the trial court except in the following respect:

Conclusion of law No. 11 ("Failing to make accommodations for members of the public who are disabled is unreasonable.") is vacated.

We therefore affirm the trial court's order except as modified.

MODIFIED AND AFFIRMED.

Judges HUNTER, Robert C. and ERVIN concur.