IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-309

Filed 3 December 2024

Moore County, No. 22 CVS 515

NC CITIZENS FOR TRANSPARENT GOVERNMENT, INC. and KEVIN DRUM,
Plaintiffs,

v.

THE VILLAGE OF PINEHURST and JOHN STRICKLAND in his official capacity
as Mayor of the Village of Pinehurst; and JANE HOGEMAN in her official capacity
as a member of the Village of Pinehurst Council, Defendants.

Appeal by Plaintiffs from an order entered 12 October 2023 by Judge James
M. Webb in Moore County Superior Court. Heard in the Court of Appeals 11
September 2024.

*C. Amanda Martin for Plaintiffs-Appellants.*

*Hartzog Law Group, LLP by Dan M. Hartzog and Dan M. Hartzog, Jr.; and
Van Camp, Meacham & Newman, PLLC, by Michael J. Newman, for
Defendants-Appellees.*

*Reporters Committee for Freedom of the Press, by Elizabeth J. Soja, Katie
Townsend, Mara Gassman, and Daniela del Rosario Wertheimer, Amici
Curiae.*

WOOD, Judge.

N.C. Citizens for Transparent Government, Inc. and Kevin Drum ("Plaintiffs")

appeal from an order granting a Motion for Judgment on the Pleadings, arguing the

trial court erred in finding the e-mail exchange among members of the Village of

Pinehurst Council did not violate N.C. Gen. Stat. § 143-318.9 *et seq*. For the reasons set forth below, we affirm the trial court's order.

## I. Factual and Procedural Background

On 20 September 2021 the Pinehurst Village Council ("Council") held a special meeting for a "personnel discussion." The five members of the Council included Mayor John Strickland ("Mayor Strickland"), Mayor Pro Tem Judy Davis ("Davis"), Council member Lydia Boesch ("Boesch"), Council member Jane Hogeman ("Hogeman"), and Council member Kevin Drum ("Plaintiff Drum"). During the closed session, discussions concerned Plaintiff Drum's and Boesch's conversations with the Chief of Police, Moore County legislators, aggressive e-mails to business owners and other behaviors that council members believed violated the Village Ethics Policy.

Between the 20 September 2021 special meeting and a 12 October 2021 Regular Meeting of the Council, various people including Mayor Strickland, Davis, Hogeman, the Village Attorney, and the Village Manager exchanged e-mails concerning Plaintiff Drum's and Boesch's conduct, which Plaintiff Drum had conceded during the special meeting was inconsistent with the Ethics Policy.

At the 12 October 2021 public meeting, Mayor Strickland raised items "that have to do with ethics violations involving Council members." Mayor Strickland addressed letters council members had received from local business owners complaining Plaintiff Drum had sent them "a series of intimidating, some would call threatening, e-mails." Plaintiff Drum agreed his behavior in sending these e-mails

was inconsistent with the Ethics Policy. Council members expressed their disapproval of Plaintiff Drum's behavior during this public meeting and discussed whether Plaintiff Drum should be disciplined for his conduct. Plaintiffs concede no decision was made on 12 October, and the other council members agreed to "defer issues" related to Plaintiff Drum's conduct to the 26 October 2021 public meeting.

Between 12 October and the next public meeting on 26 October, council members, the Village Attorney, and the Village Manager continued to exchange e-mails, which included a draft motion for censure. Boesch, at some point during this time, contacted the UNC School of Government for guidance. On 14 October 2021, Frayda Bluestein ("Bluestein") at the UNC School of Government responded to Boesch's inquiry, advising it would be hard for three members of the council discussing town business via e-mail to be "simultaneous" in their communication and conversations spaced over time are not illegal and do not require the presence of the entire board. Boesch forwarded Bluestein's reply e-mail to Plaintiff Drum.

At the 26 October 2021 public meeting, Mayor Strickland again opened discussion of Plaintiff Drum's ethics issues. Council members never voted on whether to censure Plaintiff Drum, and Plaintiff Drum was never formally censured. Mayor Strickland stated the council members had already expressed their disapproval of Plaintiff Drum's behavior at the 12 October 2021 public meeting, and he believed it was the "consensus" of the Council "that we disapprove" of Plaintiff Drum's conduct.

Plaintiff Drum's re-election campaign was unsuccessful and his term on the Council ended on 31 December 2021. Plaintiff Drum formed N.C. Citizens for Transparent Government, Inc. on 7 February 2022.

On 6 May 2022, Plaintiffs sued Defendants, seeking declaratory and injunctive relief for violations of the Open Meetings Law alleged to have occurred at the 20 September 2021 special called meeting and during the e-mail communications occurring between 20 September and 12 October 2021. Plaintiffs attached as Exhibit H, copies of all the e-mail exchanges and contend these communications constituted an official meeting in violation of the Open Meetings Law.

On 11 September 2023, Defendants filed a Rule 12(c) Motion for Judgment on the Pleadings arguing that Exhibit H demonstrated that no simultaneous communication ever occurred between any council members and the e-mails are not subject to the Open Meetings Law. On 25 September 2023, in open court, Plaintiffs dismissed without prejudice all claims related to the 20 September 2021 special meeting.

On 12 October 2023, the trial court granted Defendants' Rule 12(c) Motion. The trial court also denied Plaintiffs' request for declaratory relief, and dismissed with prejudice all remaining claims, including Plaintiffs' claims for injunctive relief and attorney fees.

On 13 November 2023, Plaintiffs appealed the trial court's order granting Defendants' Motion for Judgment on the Pleadings.

## II.    Analysis

On appeal, Plaintiffs contend the trial court erred by granting Defendants' Rule 12(c) Motion for Judgment on the Pleadings.  Plaintiffs argue the e-mail exchange between members of the Council, discussing the possibility of censuring Plaintiff Drum, constituted a meeting in violation of N.C. Gen. Stat. § 143-318.9, *et. seq.* for failure to conduct the public's business in public.

### A.  Standard of Review

Allegations asserting a party violated the Open Meetings Law are considered by the Superior Court in its role as a trier of fact.

> It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.  If supported by competent evidence, the trial court's findings of fact are conclusive on appeal.  Conclusions of law drawn by the trial court from its findings of fact are reviewable de novo on appeal.

*Gannett Pacific Corp. v. City of Asheville*, 178 N.C. App. 711, 713, 632 S.E.2d 586, 588 (2006) (internal quotations and citations omitted).

Whether a violation of the Open Meetings Law occurred is a conclusion of law. Therefore, we apply a *de novo* standard of review.  *Garlock v. Wake Cnty. Bd. Of Educ.*, 211 N.C. App. 200, 214, 712 S.E.2d. 158, 169 (2011).

### B.  E-mail exchange

For communications to violate the Open Meetings Law, the communicative

exchange must meet the statutory definition of a meeting under N.C. Gen. Stat. §

143-318.10(d), which states in pertinent part:

> "Official meeting" means a meeting, assembly, or gathering together at any time or place or the *simultaneous communication* by conference telephone or other electronic means of a *majority of the members* of a public body for the purpose of conducting hearings, participating in deliberations, or voting upon or otherwise transacting the public business within the jurisdiction, real or apparent, of the public body.

N.C. Gen. Stat. § 143-318.10(d)(2023).(emphasis added).

At issue here is whether the e-mails in question were "simultaneous

communication" between a "majority" of the council members. Both parties assert

that "simultaneous" is defined as "existing or occurring at the same time."

Additionally, the parties agree there are five members of the Council, and that three

members constitute a majority of the Council. Thus, three members of the Council

must communicate at the same time for the interaction to meet the statutory criteria

set forth in N.C. Gen. Stat. § 143-318.10(d).

The question of whether e-mail exchange is a form of communication by which an

official meeting can be conducted has not been directly answered by North Carolina

courts. Therefore, we look to similar statues regarding communications enacted by

our legislature.

The North Carolina legislature considered what forms of technology constitute

"simultaneous communication" during North Carolina's response to the COVID

pandemic. In N.C. Gen. Stat. § 166A-19.24, addressing remote meetings during an emergency, the legislature stated simultaneous communication is defined as "[a]ny communication by conference telephone, conference video, or other electronic means." N.C. Gen. Stat. § 166A-19.24(i). This definition is very similar to N.C. Gen. Stat. § 143-318.10(d) at issue here. N.C. Gen. Stat. § 166A-19.24(b)(4) further states:

> simultaneous communication *shall* allow for any member of the public body *to do all* of the following: (a) Hear what is said by the other members of the public body, (b) Hear what is said by any individual addressing the public body, (c) To be heard by the other members of the public body when speaking to the public body.

N.C. Gen. Stat. § 166A-19.24(b)(4) (2023) (emphasis added). Additionally, "[a]ll chats, instant messages, texts, or other written communications between members of the public body regarding the transaction of the public business during the remote meeting are deemed a public record." N.C. Gen. Stat. § 166A-19.24(b)(8). In reviewing the legislature's use of simultaneous communication in statute, e-mail is not considered a simultaneous communication subject to open meetings requirements but rather work product subject to public records requests.

Looking beyond our borders, other state courts have considered whether e-mail communications are subject to their Open Meetings Laws. The rules governing Open Meeting Laws vary from state to state with some, like North Carolina, requiring

"simultaneous communication" while others do not. *Compare N.C. Gen. Stat. §143-318.10(d) (2023) with Mass. Gen. Laws ch. 30A §18 (2024).*

Many states requiring simultaneous communication have found e-mails generally do not meet the requirement of "simultaneity." When considering whether emails exchanged between city council members constituted a meeting under Virigina's Freedom of Information Act the Supreme Court of Virginia stated, "[w]hile such simultaneity may be present when e-mail technology is used in a "chat room" or as "instant messaging," it is not present when e-mail is used as the functional equivalent of letter communication by ordinary mail . . . ." *Beck v. Shelton*, 267 Va. 482, 490, 593 S.E.2d 195, 199 (2004). Similarly, the Commonwealth Court of Pennsylvania held that a series of e-mails between board members sent between four hours and over two days apart lacked the "virtually simultaneous interaction" required to constitute a meeting. *M4 Holdings, LLC v. Lake Harmony Estates Prop. Owner's Ass'n.*, 237 A.3d 1208, 1222 (2020). Most recently, the California Fourth District Court of Appeals held, "[e]-mail exchanges among directors on those items that occur before a board meeting and in which no action is taken on the items . . . do not constitute a board meeting within the meaning of [the Common Interest Development Open Meeting Act.]" *LNSU #1, LLC. v. Alta Del Mar Costal Collection Cmty Ass'n.*, 94 Cal. App. 5th 1050, 1080, 312 Cal. Rptr. 3d 707, 729 (2023). While the holdings of these jurisdictions are not binding on this Court, we find their reasoning to be both instructive and persuasive.

*Sub judice,* the e-mail exchanges began on 8 October 2021 and continued intermittently through 12 October 2021. On 8 October 2021, the Village Attorney sent an e-mail to Mayor Strickland and the Village Manager, copying Davis and Hogeman. The e-mail provided information relevant to the ethics issues that had been raised at the special meeting on 20 September 2021. The information included the Code of Ethics; statements from the police chief, human resources, and the primary business complainants; and proposed Censure Resolutions. Hogeman was the first council member to respond, approximately an hour and a half after the initial e-mail. Her response to the Village Attorney was, "Thank you." Mayor Strickland responded next, approximately two hours after the initial e-mail was sent. Mayor Strickland, the Village Manger and the Village Attorney exchanged a few e-mails over the course of the afternoon trying to ensure that all relevant rules and policies would be followed as they proceeded with addressing the ethics concerns.

Almost four hours after the initial e-mail was sent Hogeman responded again and indicated that she agreed the issues needed to be addressed but was not sure how to do so. She also sent an e-mail the following morning stating that Mayor Strickland should preside over the upcoming meeting rather than presenting the information from the complainants, noting that the issues were brought to the Council and they sought the advice of the Village Attorney and that the council members should have the opportunity to address the issues.

Approximately twenty-four hours after the initial e-mail was sent from the

Village Attorney, Davis responded to the chain. Only two e-mails from Davis were included in Exhibit H. Her first e-mail clarified Hogeman's prior suggestions and requested a few details for clarification. Her second e-mail, sent two days later on 11 October 2021, merely thanked Mayor Strickland and suggested one edit to a previous document.

A council member who generates two e-mails containing seven sentences of less than ninety words over the course of five days is not engaging in "simultaneous communication," "conducting hearings, participating in deliberations, or voting upon or otherwise transacting the public business." When limited communication takes place hours or days apart, it does not constitute "simultaneous communication." Additionally, Exhibit H demonstrates that the vast majority of the communication occurred between Mayor Strickland, the Village Attorney and the Village Manager, only one of whom is a council member, and thus, it fails to meet the requirement that a majority of the council members must engage in the communication.

Plaintiffs concede Plaintiff Drum was never formally censured. Further, the Council never voted on whether to censure Plaintiff Drum. Therefore, the council members did not deliberate, vote or otherwise complete business *via* e-mail as an "end-run" around mandated public deliberation as Plaintiffs suggest. Rather, a few members of the Council, one of whom was also the mayor, consulted with the Village Attorney and the Village Manager to ensure they were prepared for the next open Village Council meeting.

### III.    Conclusion

In order for an official meeting subject to North Carolina's Open Meeting Law to occur there must be simultaneous communication by a majority of the members of a public body for the purpose of conducting hearings. We conclude, upon the facts of this case, the e-mail exchanges between 20 September 2021 and 12 October 2021 do not qualify as "simultaneous communication" and are not subject to the North Carolina Open Meetings Law. The trial court properly granted Judgment on the Pleadings in favor of Defendants and properly denied the declaratory judgment sought by Plaintiffs. We affirm the trial court's order.

AFFIRMED.

Chief Judge DILLON and Judge TYSON concur.